# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHELLE LYNN MORRIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-422-STE |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's claims under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-21). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 15, 2014. (TR. 15). At step two, the ALJ determined Ms. Morris had the following severe impairments: obesity; diabetes mellitus; peripheral neuropathy; hypertension; chronic obstructive pulmonary disease; asthma; and peripheral arterial disease. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15).

At step four, the ALJ concluded that Ms. Morris was unable to perform any past relevant work. (TR. 19). Even so, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders[,] ropes or scaffolds, can perform no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; can have no more than frequent exposure to extreme temperatures, humidity, environmental or respiratory irritants; requires an hourly sit/stand option; and is limited to no more than simple, routine, repetitive tasks.

(TR. 16).

At step five, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 52-53). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 53-54). The ALJ adopted the testimony of the VE and concluded that Ms. Morris was not disabled based on her ability to perform the identified jobs. (TR. 20).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### IV. ISSUE PRESENTED

On appeal, Plaintiff alleges error at step five.

### V. STEP FIVE

As part of the RFC, the ALJ concluded that Plaintiff was "limited to no more than simple, routine, repetitive tasks." (TR. 16). At the administrative hearing, the ALJ posed

this restriction to the VE in an attempt to ascertain the availability of jobs. (TR. 52-53). Prior to doing so, the ALJ confirmed with the VE that she would alert the ALJ regarding any conflict between her testimony and specific job requirements as set forth in the DOT. (TR. 52). With the RFC limitations, the VE identified three jobs from the DOT which she deemed Plaintiff capable of performing: (1) Telephone Information Clerk, DOT #237.367-046; (2) Food and Beverage Order Clerk, DOT #209.567-014; and (3) Document Preparer, DOT #249.587-018. (TR. 35). The ALJ adopted the VE's testimony and concluded that Ms. Morris was not disabled based on her ability to perform the identified jobs. (TR. 20). On appeal, Ms. Morris alleges error at step five, arguing that the ALJ failed to resolve a conflict which existed between the RFC which limited Plaintiff to performing work involving no more than "simple, routine, repetitive tasks" and all three jobs, which require a "reasoning level three." (ECF No. 14:8-11). The Court agrees.

The DOT defines occupations, in part, by the "reasoning level" required to perform the occupation. Reasoning levels describe a job's requirements regarding understanding instructions and dealing with variables. These levels range from one to six, with one being the simplest and six the most complex. Reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer. As noted by Plaintiff, all three jobs the ALJ relied on at step five required reasoning level

three. *See* DOT #237.367-046 (Telephone Information Clerk); DOT #209.567-014 (Food and Beverage Order Clerk); and DOT #249.587-018 (Document Preparer).

Ms. Morris argues that her limitation to jobs involving only "simple, routine, repetitive tasks" facially conflicts with reasoning level three, which is required of the identified jobs. (ECF No. 14:9-11). As a result, Plaintiff argues that: (1) the ALJ had an affirmative duty to resolve the conflict or obtain an explanation for the same before relying on the VE's testimony at step five and (2) because the ALJ failed to resolve the conflict, reversal is warranted. (ECF No. 14:9-11). In response, the Commissioner presents three arguments, none of which are persuasive.

First, Mr. Saul argues that the VE's testimony regarding a lack of conflict provides substantial evidence to support the ALJ's decision, even if a conflict had existed. In support, the Commissioner relies on SSR 04-p as the controlling authority regarding the ALJ's duty to resolve conflicts between the DOT and VE testimony. (ECF No. 20:6-7). Indeed, SSR 00-4p places on the ALJ an "affirmative responsibility to ask about any possible conflict between [the] VE ... evidence and information provided in the DOT." SSR 04-p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Here, Mr. Saul argues that the ALJ discharged her duty under SSR-04 by confirming with the VE, prior to her testimony, that she would alert the ALJ to any possible conflict between her testimony and the DOT. (ECF No. 20:10-11). Because the ALJ failed to identify a conflict, Mr. Saul argues that no further inquiry and/or resolution was required and the ALJ was entitled to rely on the VE's testimony as substantial evidence at step five. (ECF No. 20:10-11).

5

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit held that a limitation to "simple and routine work tasks" "seem[ed] inconsistent with the demands of level-three reasoning." There, the Court focused on the VE's failure to acknowledge and explain the discrepancy between testimony that the plaintiff could perform jobs which required level three reasoning and the DOT. *See Hackett*, 395 F.3d at 1175 ("[T]here is no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation for the conflict."). Mr. Saul argues that *Hackett* is not controlling because in that case, the Court held that the ALJ had erred by failing to ask the VE whether his testimony conflicted with the DOT. (ECF No. 20:8). According to Mr. Saul, "*Hackett* was about the ALJ's duty to develop the record, not about the ALJ's duty to resolve conflicts." (ECF No. 20:9). Here, however, Defendant argues that unlike in *Hackett*, the ALJ *did* ask the VE to identify any conflicts, which discharged her duty to develop the record and required no further investigation. (ECF No. 20:8-11). As a result, the Commissioner argues that the ALJ was entitled to rely on the VE's testimony as substantial evidence at step five. (ECF No. 20:9). The Court disagrees.

Here, like in *Hackett*, neither the VE nor the ALJ acknowledged or explained the discrepancy between the VE testimony and the DOT as it related to "simple, routine, and repetitive tasks." The fact that the VE failed to identify a conflict after assuring the ALJ that she would do so did not relieve the ALJ from her duty to investigate regarding a conflict. See *Haddock v. Apfel,* 196 F.3d 1084, 1087 (1999) ("before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of

6

nondisability, the ALJ must ask the expert how his or her testimony as to the ... requirement[s] of identified jobs corresponds with the Dictionary of Occupational Titles, **and** elicit a reasonable explanation for any discrepancy on this point.") (emphasis added); see also SSR 00–4p, 2000 WL 1898704, at *2–*4 ("[w]hen there is an apparent unresolved conflict between VE ... evidence and the DOT, the [ALJ] **must** elicit a reasonable explanation for the conflict before relying on the VE ..." and "[t]he [ALJ] **must** explain the resolution of the conflict irrespective of how the conflict was identified") (emphasis added); Hackett, 395 F.3d at 1175 (noting that SSR 00–4p "essentially codifies Haddock" and "requires a reasonable explanation for conflicts between a VE's testimony and the DOT relating to any 'occupational information' ") (citation omitted); Wilson v. Saul, 2019 WL 6337444, at *6 (W.D. Okla. Oct. 18, 2019) (rejecting the Commissioner's argument that the VE's testimony regarding a lack of conflict was sufficient simply because the ALJ asked the VE to identify any conflicts with the DOT and the VE failed to do so); Stevens v. Commissioner of Social Security, 2019 WL 2476750, at *2 (W.D. Okla. June 13, 2019) (finding the existence of a conflict which required an explanation under SSR 04-p even though the ALJ had asked the VE to advise her of any inconsistency between the VE's testimony and the DOT, and the VE did not indicate any conflict existed); Kelley v. Saul, 2019 WL 7293408, at *5 (D.N.M. Dec. 30, 2019) ("mere reliance on the VE's affirmation of consistency is not enough").

Next, Mr. Saul argues that no actual conflict existed between the RFC and the VE's testimony because Plaintiff's education and work experience allowed her to perform the

identified jobs. (ECF No. 20:12-14). In support, the Commissioner cites unpublished cases which relate a GED reasoning level to an individual's educational background. (ECF No. 20:12-13) (citing *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) and *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012)). This Court has repeatedly rejected this argument. *See Wilson,* at *6 (citing *Clark v. Colvin*, 2016 WL 1171153, at *6 (W.D. Okla. Feb. 26, 2016) ("The undersigned declines to conclude, as urged by the Commissioner, that GED reasoning levels can be disregarded when addressing the mental demands of jobs listed in the DOT." (quotation omitted)), *adopted by* 2016 WL 1178807 (W.D. Okla. Mar. 23, 2016) and *Stevens,* 2019 WL 2476750 (W.D. Okla. June 13, 2019)).

Finally, Defendant argues that no apparent conflict existed between the VE's testimony and the DOT, stating that if the ALJ had believed a conflict existed, "she would have asked the vocational expert to resolve it, or would have resolved it [herself]." (ECF No. 20:11-12). But as stated, in *Hackett*, the Tenth Circuit held that a limitation to "simple and routine work tasks" "seem[ed] inconsistent with the demands of level-three reasoning"—i.e.—that an apparent conflict existed between such RFC limitations and reasoning level three. *Hackett*, 395 F.3d at 1176. As such, the Court reversed for resolution of the issue. *See Hackett*, 395 F. 3d at 1176 ("We therefore must reverse this portion of the ALJ's decision and remand to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE.").

The Court finds *Hackett* controlling and orders remand for further investigation into the apparent conflict between the RFC and the jobs identified by the VE.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the foregoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on February 20, 2020.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE